# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## SHERMAN DIVISION



SEP 0 3 2024

Clerk, U.S. District Court
Eastern District of Texas

| | | |
|---|---|---|
| VIRGINIA ALCALA PRO SE | § | |
| Plaintiff | § | |
| | § | |
| v. | § | No.  4:24-cv-00006-AGD |
| | § | |
| BOSCO AUTO GROUP | § | |
| | § | |
| Defendant | § | |

---

### FIRST AMENDMENT TO PLAINTIFF'S ORIGINAL PETITION

---

#### PRELIMANARY STATEMENT

Plaintiff, Virginia Alcala(the "Plaintiff" or "Virginia"), files its Complaint seeking entry of a relief in the relinquishing of the vehicle title into Plaintiff's possession and removal of the current lien holder based on the rescission of the transaction with Defendant BOSCO AUTO GROUP and award monetary damages for violations of the Truth In Lending Act. The Federal Trade Commission ("FTC" or "Commission") has issued this Combating Auto Retail Scams Trade Regulation Rule ("CARS Rule," "Rule," or "Final Rule") and Statement of Basis and Purpose ("SBP") related to the sale, financing, and leasing of covered motor vehicles by covered motor vehicle dealers. The Final Rule, among other things, (i) prohibits motor vehicle dealers from making certain misrepresentations in the course of selling, leasing, or arranging financing for motor vehicles, (ii) requires accurate pricing disclosures in dealers' advertising and sales communications, (iii) requires dealers to obtain consumers' express, informed consent for charges, (iv) prohibits the sale of any add-on product or service that confers no benefit to the consumer, and (v) requires dealers to keep records of certain advertisements and customer transactions.(16 CFR Part 463) The Plaintiff now pleads as follows:

1.    Comes Now, Plaintiff,  brings this action under 12 CFR Part 1026- Truth in Lending (Regulation Z), 12 CFR § 1026.23(b)(1), 12 CFR § 1026.23(a)(1)(3), 12 CFR Part 1026.17(a), 12 CFR § 1026.23(d)(1 )(2), based on the Defendant's failure to deliver disclosures regarding Plaintiff's Right of Rescission, in violation of TILA, and its implementing regulation, Regulation Z and under Sections 5(a), 5(m)(1)(A), 15 U.S.C. Sec. 45(a)(1), 13(b), and 16(a) of the Federal Trade Commission Act ("FTC Act")

---

## JURISDICTION

2.    This Court has subject-matter jurisdiction over this matter because it is brought under "Federal consumer financial law," 12 U.S.C. § 5565(a)(1) and presents a federal question, 28 U.S.C. § 1331 nd 1337 and 15 U.S. Code § 1635 and 12 CFR § 1026.23 under 12 CFR Part 1026- Truth in Lending (Regulation Z).

3.    Venue is proper in the United States District Court for the Eastern District of Texas under 28 U.S.C. § 1391(a)-(b), 1395(a), and 15 U.S.C. § 53(b).

4.    28 U.S. Code § 1391(a) - Applicability of Section - this section shall govern the venue of all civil actions brought in district courts of the United States and the proper venue for a civil action shall be determined without regard to whether the action is local or transitory in nature.

5.    28 U.S. Code § 1391(b)(2) Venue in General - A civil action may be brought in a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred. The operative facts of venue in general include (i) location of the relevant agreements were negotiated and executed (Collin County), (ii) location of where the alleged unlawful taking of a natural persons personal property was committed (Collin County), [and] (iii) location of where the Plaintiff resided when these unlawful acts gave rise to and were committed (Collin County)."

6.    The forum clearly has an interest in holding accountable and deterring those who commit gross human rights violations. Moreover, insofar as the violations were solicited or fostered by a domiciliary of the forum and by acts performed within the forum, the forum is interested in the matter.

7.    The contract in question has a circumstantial bearing on the case, the place of formation of the contract will be the relevant factor in this case, not the primary place of business of the entity that is unlawfully using the contract. The alleged unlawful taking of personal property was committed in this jurisdiction and there is a strong local interest in the controversy, as more time progresses, more and more natural persons are being "injured by these individuals" in which the public in this jurisdiction also has an interest.

## PARTIES

8.    The plaintiff, Virginia Alcala, is a natural person who resided at 70 Jade Rd. Wylie Texas in Collin County, Texas, at the time of the violations also known as (Plaintiff)(Consumer). Plaintiff temporarily resides at 310 Acme St. Dallas Texas due to the Unfair and deceptive acts of the defendants.

9.      Defendant, Bosco Auto group or Paul Bosco Sr. of Bosco Auto Group and his assignees, may be served with

process at 1401 Justin Rd, Flower Mound, TX 75028, also known as (Creditor)(Covered Person)(Person)(BAG).

10.     At all times relevant hereto. the defendant regularly extended or "offered" to extend consumer credit for

which a finance charge is or_may be imposed or which by written agreement, is payable in more than four install-

ments and is the personto whom the transaction which is the subject of this action is initially payable, making

defendant a creditor within the meaning of TILA, 15 U.S.C. § 1602(g) and Regulation Z § 226.2(a)(17)(i), a (CSO)

Credit Service Organization(Tex. Fin. Code § 393.001(3)(b),(C)(Tex. Fin. Code § 393.001(4).

11.     At all times relevant to this Complaint, BAG was a covered person because it purchased, acquired, and

serviced auto-finance loans made by dealers 12 U.S.C. § 5481(6), 15(A)(i). These loans were "offered or provided

for use by consumers primarily for personal, family or household purposes"."12 U.S.C. § 5481(5).

AUTHORITY

12.     Section 1026.1—Authority, Purpose, Coverage, Organization, Enforcement and Liability 1(c) Coverage

1. Foreign applicability. Regulation Z applies to all persons (including branches of foreign banks and sellers located

in the United States) that extend consumer credit to residents (including resident aliens) of any state as defined in §

1026.2. If an account is located in the United States and credit is extended to a U.S. resident, the transaction is

subject to the regulation. This will be the case whether or not a particular advance or purchase on the account takes

place in the United States and whether or not the extender of credit is chartered or based in the United States or a

foreign country. For example, if a U.S. resident has a credit card account located in the consumer's state issued by a

bank (whether U.S. or foreign-based), the account is covered by the regulation, including extensions of credit under

the account that occur outside the United States. In contrast, if a U.S. resident residing or visiting abroad, or a

foreign national abroad, opens a credit card account issued by a foreign branch of a U.S. bank, the account is not

covered by the regulation.

13.     Section 1026.1—Authority, Purpose, Coverage, Organization, Enforcement and Liability (c) Coverage.

(1) In general, this part applies to each individual or business that offers or extends credit...when four conditions are

met:

(i) The credit is offered or extended to consumers;

(ii) The offering or extension of credit is done regularly;

(iii) The credit is subject to a finance charge or is payable by a written agreement in more than four installments; and

(iv) The credit is primarily for personal, family, or household purposes.

(2) If a credit card is involved, however, certain provisions apply even if the credit is not subject to a finance charge, or is not payable by a written agreement in more than four installments, or if the credit card is to be used for business purposes.

## SECTION 5 OF THE FTC ACT

14.    Section 5 of the Federal Trade Commission Act (FTC Act) (15 USC 45) prohibits "unfair or deceptive acts or practices in or affecting commerce." The prohibition applies to all persons engaged in commerce, including banks. Under section 8 of the Federal Deposit Insurance Act, the Board has the authority to take appropriate action when unfair or deceptive acts or practices are discovered.

15.    Responsibilities for enforcing the prohibition against unfair or deceptive practices as they apply to state-chartered banks are spelled out in a joint statement issued on March 11, 2004, by the Board and the Federal Deposit Insurance Corporation. That statement, which is included as an appendix to this chapter, describes in depth the legal standards for unfair and deceptive acts or practices, discusses the management of risks relating to unfair or deceptive acts or practices, and provides general guidance on measures that state-chartered banks can take to avoid engaging in such acts or practices, including best practices.

Applicability of Section 5

16.    The amendment made by section 5 of this Act [amending section 57a of this title] shall apply only to rulemaking proceedings initiated after the date of enactment of this Act. Such amendment shall not be construed to affect in any manner a rulemaking proceeding which was initiated before the date of enactment of this Act [Aug. 26, 1994].

Relationship of Section 5 to Other Laws and Ratings

17.    Some acts or practices may violate both section 5 of the FTC Act and other federal or state laws. Other acts or practices may violate only the FTC Act while fully complying with other consumer protection laws and regulations.

If a possible violation of the FTC Act is found, the examiner should consider whether other statutory or regulatory violations have occurred (the joint statement identifies laws that warrant particular attention in this regard).

### Statutory Authority

18    The Dodd-Frank Wall Street Reform and Consumer Protection Act ("Dodd-Frank Act") was signed into law in 2010.[1] Section 1029 of the Dodd-Frank Act authorizes the FTC to prescribe rules with respect to unfair or deceptive acts or practices by motor vehicle dealers.[2] The FTC is authorized to do so under the FTC Act and in accordance with Section 553 of the Administrative Procedure Act ("APA").[3] The grant of APA rulemaking authority set forth in Section 1029 of the Dodd-Frank Act became effective as of July 21, 2011—the designated "transfer date" established by the Treasury Department. [4]

Commission Actions Following the Dodd-Frank Act and the Rulemaking Process

19    Following enactment of the Dodd-Frank Act, the Commission published in the Federal Register a notice discussing its authority to prescribe rules with respect to unfair or deceptive acts or practices by motor vehicle dealers and announcing that it would be hosting a series of public roundtables to explore consumer protection issues pertaining to motor vehicle sales and leasing, including what consumer protection issues, if any, exist that could be addressed through a possible rulemaking. [5] The Commission sought participation from regulators, consumer advocates, industry participants, and other interested parties and ultimately held three such public round-tables. [6]

20.    The Commission subsequently focused on enforcement and business guidance in the motor vehicle dealer marketplace. As discussed in SBP II.C,[7] however, certain unfair and deceptive acts or practices have persisted, despite more than a decade of enforcement and education. Accordingly, on June 23, 2022, the Commission announced a Notice of Proposed Rulemaking ("NPRM") addressing unfair or deceptive acts or practices by motor vehicle dealers.[8] That notice was published in the Federal Register on July 13, 2022. [9] The NPRM, among other things, proposed to (i) prohibit motor vehicle dealers from making certain misrepresentations, (ii) require accurate pricing disclosures, (iii) prohibit the sale of any add-on product or service that confers no benefit to the consumer, (iv) require express, informed consent for add-ons and other charges, and (v) impose certain recordkeeping requirements. The comment period for the NPRM closed on September 12, 2022. In response to the NPRM and proposed rule, the Commission received more than 27,000 comments from stakeholders representing a wide range of

viewpoints. [10] These stakeholders included numerous individual consumers who described deceptive practices during recent car purchases and many who discussed current or former military service and deceptive and predatory practices common near military installations. [11] Commenters also included dealerships and their employees, industry groups, consumer and community groups, and Federal and State lawmakers and law enforcement agencies. Many commenters, such as consumers, some dealers and dealer employees, consumer groups, and lawmakers and enforcers, were supportive of the proposed rule in whole or in part. Many of these commenters also urged the FTC to include additional protections for consumers and law-abiding businesses, while others, such as industry groups, dealers, and dealer employees, asked questions or criticized the proposal. [12]

---

1     Pub. L. 111-203, 124 Stat. 1376 (2010).

2     12 U.S.C. 5519(d). See 12 U.S.C. 5519(f)(1) and (2) for definitions of the terms "motor     vehicle" and "motor vehicle dealer" under Section 1029 of the Dodd-Frank Act, r espectively.

3     See 12 U.S.C. 5519(a) (discussing the authority over "motor vehicle dealer[s] that [are] predominantly engaged in the sale and servicing of motor vehicles, the leasing and servicing of motor vehicles, or both"); 12 U.S.C. 5519(d) ("Notwithstanding section 57a of title 15, the Federal Trade Commission is authorized to prescribe rules under sections 45 and 57a(a)(1)(B) of title 15[] in accordance with section 553 of title 5, with respect to a person described in subsection (a)."); 5 U.S.C. 553. Because the Commission has authority to promulgate this Rule in accordance with the APA, it is not required to include a statement as to the prevalence of the acts or practices treated by the Rule under Section 18(d) of the FTC Act. Compare 12 U.S.C. 5519(d) and (a) (providing the FTC with APA rulemaking authority for purposes of Section 1029 of the Dodd-Frank Act), with 15 U.S.C. 57a(b)(3) (requiring a statement as to prevalence for certain rulemaking proceedings by the Commission under non-APA procedures), and 15 U.S.C. 57a(b)(1) (establishing that certain rulemaking proceedings by the Commission under non-APA procedures are subject to requirements in addition to those under the APA).

4     See 12 U.S.C. 5411(a).

5     76 FR 14014, 14015 (Mar. 15, 2011).

6     See Fed. Trade Comm'n, "The Road Ahead: Selling, Financing & Leasing Motor Vehicles" (Apr. 12, 2011), https://www.ftc.gov-/news-events/events/2011/04/road-ahead-selling-financing-leasing-motorvehicles (providing materials from roundtable in Detroit, Michigan); Fed. Trade Comm'n, "The Road Ahead: Selling, Financing & Leasing Motor Vehicles" (Aug. 2, 2011), https://www.ftc.gov/newsev-ents/events/2011/08/road-ahead-selling-financing-leasing-motor-vehicles (providing materials from roundtable in San Antonio, Texas); Fed. Trade Comm'n, "The Road Ahead: Selling, Financing & Leasing Motor Vehicles" (Nov. 17, 2011), https://www.ftc.gov-/news-events/events/2011/11/road-ahead-sellingfinancing-leasing-motor-vehicles (providing materials from roundtable in Washington, District of Columbia).

7     As used herein, references to the "Statement of Basis and Purpose" or "SBP" refer to the portions of this document that precede the regulatory text of the Final Rule. References to the "Rule," "Final Rule," or "CARS Rule" refer to the text in part 463—Combating Auto Retail Scams ("CARS") Trade Regulation Rule. Because the Final Rule is narrower than the proposed Motor Vehicle Dealers Trade Regulation Rule in the NPRM, the Commission has modified the Rule title to reflect the more limited scope.

8     See Press Release, Fed. Trade Comm'n, "FTC Proposes Rule to Ban Junk Fees, Bait-and-Switch Tactics Plaguing Car Buyers" (June 23, 2022), https://www.ftc.gov/news-events/news/press-releases/2022/06/ftcproposes-rule-ban-junk-fees-bait-switch-tactics-plaguing-car-buyers.

9     See Fed. Trade Comm'n, Notice of Proposed Rulemaking, Motor Vehicle Dealers Trade Regulation Rule, 87 FR 42012 (released June 23, 2022; published July 13, 2022) [hereinafter NPRM], https://www.govinfo.gov/content/pkg/FR-2022-07-13/pdf/2022-14214.pdf.

10     The Commission received 27,349 comment submissions filed online in response to its NPRM. See Gen. Servs. Admin., Dkt. No. FTC-2022-0046, Proposed Rule, Motor Vehicle Dealers Trade Regulation Rule (July 13, 2022), https://www.regulations.gov/docu-ment/FTC-2022-0046-0001 (noting comments received). To facilitate public access, over 11,000 such comments have been posted publicly on Regula-tions.gov at https://www.regulations.gov/document/FTC-2022-0046-0001/comment (noting posted comments). As explained at Regulations.gov, agencies may choose to redact or withhold certain submissions (or portions thereof) such as those containing private or proprietary information, inappropriate language, or duplicate/near duplicate examples of a mass-mail campaign. See Gen. Servs. Admin., Regulations.gov Frequently Asked Questions, Find Dockets, Documents, and Comments FAQs, "How are comments counted and posted to Regulations.gov?," https://www.regulations.gov/faq?an-chor=downloadingdata (last visited Dec. 5, 2023). The Commission has considered all timely and responsive public comments it received in response to its NPRM.

11     See, e.g., Individual commenter, Doc. No. FTC-2022-0046-4648 ("As a young Marine stationed in a military town I was taken advantage of by a dealership when purchasing my first car. It set me back financially for years. I know of many young military people who purchased vehicle[]s and we[]re instantly so far upside down after leaving the dealership with thousands of dollars in add on junk charges . . . ."); Individual commenter, Doc. No.

---

FTC-2022-0046-0542 ("As a former member of the Military, the amount of scams and horror stories I have heard regarding young service members buying cars is absurd. . . . Someone shouldn't have to do hours of research on how to buy a car so they don't get taken advantage of."); Individual commenter, Doc. No. FTC-2022-0046-0637 ("As a small business owner and active duty military member I have played the role of both a buyer, toiling for hours to just reach fair deals on vehicles, as well as that of an advocate for my Sailors who have been preyed upon by local dealerships. Nowhere else in our society do so many average citizens have to mentally prepare for a battle over fair pricing and treatment for something that is realistically a modern necessity."); Individual commenter, Doc. No. FTC2022-0046-9840 ("I can't list the number of times I have either seen, or have stepped in a situation, where car dealers have either attempted to take, or have successfully taken, advantage of a young military member or their family by baiting and switching when it came to the price of a car, or stated that the price was one amount, only to be charged, and over-charged a higher amount. These dealers have even attempted to pull unethical tricks on me and my wife, even after they found out that I was a military member, a combat veteran, that was serving this great nation."); Individual commenter, Doc. No. FTC-2022-0046-0845 ("Predatory practices like [bait-and-switch pricing] are common near military installations . . . .").

12      Industry commenters claimed that many of the areas covered by the proposed rule are already addressed in industry guidance. The Commission notes that, although industry guidance can provide helpful information to dealers, dealers who choose not to follow such guidance, or who engage in deceptive or unfair practices, subject their customers to significant harm. The Rule addresses such practices, thus protecting consumers and law-abiding dealers.

## FACTUAL ALLEGATIONS

21.   On or about 02/13/2023, Plaintiff was mislead to believe that she entered into a Consumer Loan with Bosco Auto Group where a credit application was completed by the Plaintiff with the intent of extending credit for a purchase money loan in exchange for an automobile for personal and household use. Plaintiff did not apply for a credit sale which involves a condition of sale and a bailment or lease, instead applied for a consumer loan or purchase money loan. Plaintiff never made a loan application, instead plaintiff was misled into a retail installment credit application for a commercial motor vehicle.

22.    Defendant did not disclose to Virginia, who is a consumer in this transaction, the type of extension of credit, and the transaction taking place if it  was a credit sale or a consumer loan.

23.    According to 12 CFR Part 1026 Subpart C - Truth in Lending (Regulation Z) § 1026.17, general disclosure requirements, the creditor shall make the disclosures required clearly and conspicuously in writing, in a form that the consumer may keep. Defendant failed to deliver to Plaintiff copies of any general disclosures and the notice of the right to rescind, pursuant to 12 CFR § 1026.23(b). Same statute also states that the notice shall be on a separate document that identifies the transaction and shall clearly and conspicuously disclose the consumer's right to rescind the transaction, in pursuant to § 1026.23(b)(1)(ii), and how to exercise the rightto rescind, with a form for that purpose, designating the address of the creditor's place of business, in pursuant to § 1026.23(b){1)(iii).

24.    Virginia, who was a consumer in this transaction, had her consumer rights violated by Defendant for failure to disclose the right to rescission, proper use of the credit transaction and credit terms.

25.    On 10/31/2023 Plaintiff notified Bosco Auto Group of 'Notice of the Right to Rescind' which includes

Plaintiff exercising right of rescission, and effects of rescission. Notice was delivered via USPS notorized by the state and received by Defendant.(see Exhibit 1B, 1C)

26.    After demands were not met, Plaintiff pursued it's lawfull right as a consumer to file a complaint with Bosco Auto Group for rescission right and misleading and deceptive practices.

27.    According to 12 CFR Part 1026 - Truth in Lending (Regulation Z) § 1026.23(d)(3), it states, 'If the creditor has delivered any money or property, the consumer may retain possession until the creditor has met its obligation under paragraph (d)(2) of this section. When the creditor has complied with that paragraph, the consumer shall tender the money or property to the creditor or, where the latter would be impracticable or inequitable tender it's reasonable value." The Defendant has not met its obligation and complied with the delivery of all property to Plaintiff.

28.    On or about February 13, 2023, Bosco knowingly and wilfully enters into a deceptive, misleading contract and takes unreasonable advantage, of the lack of understanding on the part of the consumer, of the material risks, costs or conditions of the product or service by the "misleading representation" of a Motor Vehicle Retail Install-ment Contract(Consumer Lease)(Credit Sale). This contract represents misleading obligations by representating or conveying lease disclosures, consumer lease disclosures, rental agreement disclosures inside of their Retail Install-ment contracts and disguising them as a Consumer Loan. Bosco Auto Group uses this deceptive contract and misleads the consumer into beleving they are involved in a consumer loan for personal, family and houshold use when the consumer is coerced into a Consumer Lease contract without the consumers knowledge of what type of contract it enters into. (see Exhibit Z 1(b))

29.    The use of these certain disclosures are deceptive as these disclosures are not required in a Consumer Loan or Purchase Money Loan contract. This action has caused the plaintiff substantial injury and monetary harm. This act or practice is causing harm to a large amount of consumers as it raises significant risk of concrete harm to other consumers. Bosco Auto Goup continues to deceive the public until this day and have been for several years now.

30.    The representations made by the contract in question where consumers cannot reasonably avoid injury are material as they affect the consumer's descision to purchase or use a product or service. The consumer has the inability to protect it's interest in selecting or using a consumer financial product.  In general, restrictions on the use or availability of a product or service is material as the financial institution knew or should have known that the

Intsallment Contract is a misleading lease contract and not a Consumer loan contract in which the consumer needed the omitted information to make an informed choice or descision about the product or service and the institution's behavior unreasonably creates an obstacle that impairs the free exercise of the consumers decision-making.

31.    Unity One misleads consumers by targeting the "financially unsoftisticated" into a transaction of bad faith course of dealing. These Unfair acts or practices injure both consumers and competitors because consumers who would otherwise have selected a competitor's product are wrongly diverted by the unfair act or practices by Bosco Auto Group.

### DETAILED FACTUAL ALEGATIONS AND A MORE DIFINITIVE STATEMENT

32.    There is a huge misconception by attorneys and a horrendous amount of case law that states rescission only applies to a consumers principle dwelling. As there is no case law whatsoever stating that rescsission does apply to car loans. I am here today to prove to the court that rescission rights apply to all consumers alike whether it be a consumer for a mortgage loan, car loan or aquired in a consumers principle dwelling. What would consumer protection truly be like if it singled out a consumer that needed a car loan for private, personal and household uses. It would be obsurd to think that any cosumer can be singled out under any Federally Consumer Enumerated Protected laws.

33.    In order to understand the true meaning of how TILA and Regulation Z are enforced, one must realize what types of credit can be offered to a consumer as there are only two types that are extendable.

34.    The first type of credit is called "Opend-Ended Credit";

Subpart B (sections 1026.5 through 1026.16) relates to open-end credit. It    contains rules on account-open ing disclosures (§1026.6) and periodic statements    treatment of payments (§1026.10).and credit balances ( §1026.11), procedures  for resolving credit billing errors (§1026.13), annual percentage rate calculations (§1026.14), rescission rights (§1026.15), and advertising (§1026.16).

35.    The second type of credit is called "Closed-End Credit;

SUBPART C (sections 1026.17 through 1026.24) relates to closed-end credit. It contains rules on Disclosures (§§1026.17 - 20), treatment of credit balances (§1026.21), annual percentage rate calculations (§1026.22), "rescission rights and disclosures (§1026.23)", and advertising (§1026.24).

36.    This subject matter pertains to "rescission rights (§1026.23) as the basis of this case".

FORMAT OF REGULATION Z AND SUBPART C

37.    The rules creditors must follow differ depending on whether the creditor is offering open-end credit, such as credit cards or home-equity lines, "or" closed-end credit, such as "car loans" or mortgages.

38.    As the facts show above in lines 8, 9 AND 11, The only two types of credit that can be extended are located in Subpart B and C. Lets take a look at Subpart B and C in a side by side comparison to show that both subpart B and C are subject to the right of rescission.



39.    As you can see from the comparison above, rescission rights apply to all consumer credit transactions even to car loans under Subpart C of the Truth In Lending Act.

40.    Let's take a look at what transactions under Subpart C are exlcuded from rescission.

41.    SUBPART C - 12 CFR § 1026.23 - Right of rescission - CLOSED END CREDIT

    (f) Exempt transactions. The right to rescind does not apply to the following:

        (1) A residential mortgage transaction.

        (2) A refinancing or consolidation by the same creditor of an extension of credit already secured by the consumer's principal dwelling. The right of rescission shall apply, however, to the extent the new amount financed exceeds the unpaid principal balance, any earned unpaid finance charge on the existing debt, and amounts attributed solely to the costs of the refinancing or consolidation.

(3) A transaction in which a state agency is a creditor.

(4) An advance, other than an initial advance, in a series of advances or in a series of single-payment obligations that is treated as a single transaction under § 1026.17(c)(6), if the notice required by para graph (b) of this section and all material disclosures have been given to the consumer.

(5) A renewal of optional insurance premiums that is not considered a Refinancing under § 1026.20(a)(5).

42.   Nowhere does it say above that car loan is an exempt transaction for rescission. Let's see what the CFPB has to say with the Coverage Considerations under regulation z...

See Exhibit XXXXX - Coverage Considerations under Regulation Z

43.   The digram shows that the amount financed or credit limit is $50,000 or less in which regulation z applies to this consumer transaction.

44.   We can take a look at 15 U.S. Code § 1635(e) - Right of rescission as to certain transactions.

(e)Exempted transactions; reapplication of provisions

This section does not apply to—

(1)a residential mortgage transaction as defined in section 1602(w) [1] of this title;

(2)a transaction which constitutes a refinancing or consolidation (with no new Advances) of the principal balance then due and any accrued and unpaid finance charges of an existing extension of credit by the same creditor secured by an interest in the same property;

(3)a transaction in which an agency of a State is the creditor; or

(4)advances under a preexisting open end credit plan if a security interest has already    been retained or acquired and such advances are in accordance with a previously  established credit limit for such plan.

45.   It appears that 15 U.S. Code § 1635(e)(1) as rescission does not apply to a residential mortgage. (See Below the false statement by the defense)

46.   If a residential mortgage does not apply then a car loan must apply to rescission rights of any consumer in any consumer credit transaction in which a security interest is or will be retained and not by a principle dwelling for establishing Open-Ended Credit.

47.    The defense has the burden of proof to prove with a perponderance of evidence that rescission rights "do not apply" to car loans under Subpart C. "As rescission rights do apply to car loans" the defense has the burden of proof to prove that they have sent me a right of rescission notice as they are obligated to do as a matter of law.

48.    We can take a look at the Comment for 1026.15 - Right of Rescission - Supplement I to Part 1026 - Official Interpretations

    1. Transactions not covered. Credit extensions that are not subject to the regulation are not covered by § 1026.15 even if the customer's principal dwelling is the collateral securing the credit. For this purpose, credit extensions also would include the occurrences listed in comment 15(a)(1)-1. For example, the right of rescission does not apply to the opening of a business-purpose credit line, even though the loan is secured by the customer's principal dwelling.

49.    In this section of TILA for open-end credit plan. The right of rescission does not apply to a consumer's principle dwelling...

50.    The defense must also prove that the contract in question has been approved by the Commision of the OCC as State Law requires a CSO to submit such contract for approval to be used in connection with a Consumer.

## RETAIL INSTALLMENT CONTRACT

51.    As we have now learned that rescission rights apply to car loans OR any credit transaction by a consumer, let's take a look at how this fraudulent consumer lease contract does not apply to a Consumer Loan or Purchase money loan.

52.    Defendants and Bosco auto group have used a conditional sale contract or credit sale to evade the usury statute in a transaction which the consumer intended to be in a purchase money loan(consumer loan) for personal private or household use.

53.    Plaintiff intended to enter into a Consumer Loan or Purchase Money loan in which Plaintiff was misled to beleive that a "Motor Vehicle Retail Installment Sale Transaction" is a Consumer Loan and it surely is not. A Motor Vehicle Retail Installment Sale Transaction/Contract is a commercial lease transaction that involves a Creditor and a Consumer that is purchasing a vehicle in four "installments" or more, in which constitutes a bailment or lease.(see 12 CFR § 1026.2(16) Credit sale) There are only three distinct transactions that separate a "Consumer Loan" which is for a consumer that purchases an "Ordinary Vehcle" for personal, private and household use. The Other two

transactions would be a "Retail Installment Sale" and a "Motor Vehicle Installment Sale" in which these two types of transactions are for commercial use as the term "MOTOR VEHICLE" includes a Commercial Vehicle. Please see below as the Texas Finance Code reference shows the three types of transactions by law in which only one truly applys to this consumer credit transaction:



54.    Defendants are using a Consumer Lease or Retail Loan, "Motor Vehicle Retail Installment Sale" rather than a "Consumer Loan" or "Purchase Money Loan" which specifies that a consumer's obligation is one incurred for necessaries of life.  This fraudulant Motor Vehicle Retail Installment Sale Contract or Credit Sale states that the transaction is for personal and household use which implies the form of a consumer lease. As this would be the only way a business can do business with a consumer as a "contract for sale" which includes a bailment or lease. A Consumer loan does not require a bailment or lease.(See Chapter 342 Consumer loan - There is no mention of a bailment or lease)

55.    As the facts stated above in [Exhiti A-7] show the differences between loan transactions, You have a Consumer Loan/Purchase Money Loan( "or" credit sale/motor vehicle retail installment Sale/retail loan and involves a commercial vehicle, it is the burden of the defense to: (1)prove what type of transaction occured between Bosco Auto Group and prove that it is not for a commercial vehicle or credit sale(2)prove what type of loan applies to the Consumer and the consumer loan. Does a Consumer Loan/Purchase Money loan apply "or" a" Motor Vehicle Retail

Installment sale Loan" applies to this transaction and why. (3) Prove how a motor vehicle retail installmet sale

applys to a "Consumer Financial Product" and a "Financial Product or Service" opposed to a consumer loan or

purchase money loan. Take notice of the word "USE".

> **12 CFR § 1001.2 Except as otherwise provided in Title X, in addition to the definitions set forth in 12 U.S.C. 5481(15)(A)(i)-(x), the term "financial product or service" means, for purposes of Title X: (a) Extending or brokering leases of an automobile, as automobile is defined by 12 CFR 1090.108(a), where the lease: (1) Qualifies as a full-payout lease and a net lease, as provided by 12 CFR 23.3(a), and has an initial term of not less than 90 days, as provided by 12 CFR 23.11; and (2) Is not a financial product or service under 12 U.S.C. 5481(15)(A)(ii).**
> **12 U.S. Code § 5481(5) - Consumer financial product or service The term "consumer financial product or service" means any financial product or service that is described in one or more categories under— (A)paragraph (15) and is offered or provided for use by consumers primarily for personal, family, or household purposes; or (B)clause (i), (iii), (ix), or (x) of paragraph (15)(A), and is delivered, offered, or provided in connection with a        consumer financial product or service referred to in subparagraph (A).**
> **15 U.S. Code § 1602(1) The term "consumer lease" means a contract in the form of a lease or bailment for the use of personal property by a natural person for a period of time exceeding four months, and for a total contractual obligation not exceeding $50,000, primarily for personal, family, or household purposes, whether or not the lessee has the option to purchase or otherwise become the owner of the property at the expiration of the lease...**

56.    As the facts show above, the definitions all show products of a lease and not a Consumer Loan. Notice the

word "Use" as it is often displayed.  A Motor Vehicle Retail Installment Sale Contract is a Lease Contract one that

has misled this consumer and many other consumers over a 15 year period engaging in commerce.

57.    Let's take a look at this misleading contract a little bit closer and prove this contract is for a lease rather than a

loan. (see Exhibit Z 1, Exhibit Z 2, Exhibit Z 3)

58.    There are several disclosures or elements required in a lease or consumer lease contract or lease agreement or

rental agreement.

59.    In a Purchase money loan or Consumer Loan the discloseures required are minimal and very different from a

Retail Installment Sale Contract. (See Tex. Fin. Code Chapter 342 Consumer Loans, Subchapter E; as opposed to;

see Tex. Fin. Code Chapter 348 Motor Vehicle Retail Installment Sale)

60.    After reviewing Chapter 342 Consumer Loans you can clearly see there are no required disclosures for leases,

arbitrations or repossession as you have now seen the misleading disclosures represented in this Motor Vehicle

Retail Installment Contract that apply to leases, consumer leases and rental agreements.

61.    This Contract in question does not give the consumer the choice of a lease or loan for personal and household

use. The contract coerces the consumer into a consumer lease.(Exhibit Z 1(b) attached)

62.    This contract in question has 7 elements of lease and consumer lease disclosures contained within it's

contract. See Exhibit Z 1(d), Exhibit Z 2(e), Exhibit Z 3(b), Exhibit Z 4(a), Exhibit Z 4(b), Exhibit Z 4(c),

Exhibit Z 4(d).

63.    This contract in question has elements of a Credit Sale, Conditional Sale and Rental Agreement dislcosures. These terms include a bailment or lease and most of all pay attention to the word "USE" as that means for purposes of a lease or rental.(see Exhibit Z 2(a), (b), (c), (d))

64.    Exhibit Z 1(a) shows this contract is for a commercial Vehicle.

65.    The Texas Finance Code explains the difference between these types of contracts. Where more deceptive acts come into play are, the defendants are using elements of three types of lease disclosures in their contract, the contract does not speicify if it is a Consumer Lease Contract or a Purchase Money Loan Contract.Consumer Loan, has disclosures of a consumer lease, has disclosures of a rental agreement and low and behold the financial part is of a consumer loan. Wow.(Exhibit Z 3) for consumer loan disclosures in a Motor Vehicle Retail Installment Sale Contract.

66.    This Contract in question is a fraudulent contract in which has been specifically designed to mislead the consumer into a "lease contract/credit sale" in order to be able to evade usery laws, enforce unlawfull arbitrational agreements and unlawful repossession with non-judicial action and hold the comsumer liable to obligations it has no present right to.

67.    This misleading, unfair and decptive contract was offered by Bosco Auto group willfully, intentionally, knowingly, and/or in gross disregard of the rights of the Plaintiff.

68.    The facts present herein prove that the contract is for a lease and not a Consumer Loan. The unfair and deceptive practices by the defendants stated herein have caused severe mental harm to the plaintiff and many other consumers in this state.

69.    The defense has the burden of proof to prove what type of contract is a Motor Vehicle Retail Installment Sale Contract and how it applies to a consumer for personal and household use and not a consumer lease for personal and household use as they are two distinked options that should be disclosed or clearly explained on the Consumer Contract.

TILA APPLIES TO THE CONTRACT ORIGINATOR BOSCO AUTO GROUP

70.    In order to understand how TILA applys to this transaction is to "stop-and-think" and see what the law states

about the Authority of TILA and Regulation Z:



Exhibit A-17                                                    Reference to:  Cornell University Law Website

Ex. A-17(a)   Pl.: Comment

**12 CFR § 1026.1 - Authority, purpose, coverage, organization, enforcement, and liability. - Authority of TILA and regulation z**

Bosco Auto Group is a COVERED BUSINESS as it meets all four criteria needed to be a covered business in "any consumer credit transaction" in which a security interest is or will be retained

(a) Authority. This part, known as Regulation Z, is issued by the Bureau of Consumer Financial Protection to implement the Federal Truth in Lending Act, which is contained in title I of the Consumer Credit Protection Act,

(b) Purpose. **The purpose of this part is to promote the informed use of consumer credit by requiring disclosures about its terms** and cost Subpart G set forth special rules addressing certain charges applicable to credit card accounts under an open-end (not home-secured) consumer credit plan.

(c) Coverage - (1) <u>In general, this part applies to each individual or business that offers or extends credit,</u> **other than a person excluded from coverage of this part by section 1029 of the Consumer Financial Protection Act of 2010, title X of the Dodd-Frank Wall Street Reform and Consumer Protection Act, Public Law 111-203, 124 Stat. 1376, when four conditions are met:**

(i) **The credit is offered or extended to consumers;**
(ii) **The offering or extension of credit is done regularly**;
(iii) **The credit is subject to a finance charge or is payable by a written agreement in more than four installments**; and
(iv) **The credit is primarily for personal, family, or household purposes.**

(2) If a **credit card is involved**, however, certain provisions apply even if the credit is not subject to a finance charge, or is not payable by a written agreement in more than four installments, or if the credit card is to be used for business purposes.

71.   Bosco Auto group is a COVERED BUSINESS as it meets all four criteria needed to be a covered business in "any consumer credit transaction" in which a security interest is or will be retained.

72.   The defence has the burden of proof to prove that Bosco Auto group is not a covered business as it regularly offers or extends credit primarily for personal, family, or household purposes.

VIOATIONS OF THE TRUTH AND LENDING ACT

COUNT I

73.    The Plaintiff incorporates the allegations contained in paragraph 21 through 27 as though fully set forth herein.

74.    TILA and Regulation Z require that certain material disclosures be provided to a consumer before consummation of a loan contract. 12 C.F.R. § 1026.17(a)-(b), 1026.18.

75. Among the required material disclosures in a credit transaction, the creditor shall deliver the notice required. 12 C.F.R. § 1026.23(a)(1).

76. When a consumer rescinds a transaction, the security interest giving rise to the right of rescission becomes void

and the consumer shall not be liable for any amount, including any finance charge. 12 C.F.R § 1026.23(d).

77.   Within 20 calendar days after receipt of a notice of rescission, the creditor shall return any money or property that has been given to anyone in connection with the transaction. 12 C.F.R § 1026.23(d)(1).

78.   If the required notice or material disclosures are not delivered, the right to rescind shall expire 3 years after consummation, upon transfer of all of the consumer's interest in the property, or upon sale of the property, whichever occurs first. 12 CFR § 1026.23(a)(3).

79.   The creditor shall take any action necessary to reflect the termination of the security interest. 12 CFR § 1026.23(d)(1).

## VIOATIONS OF THE FTC ACT

80.   Section 5(m)(1)(A) of the FTC Act, 15 U.S.C. 45(m)(1)(A), prohibits "unfair or deceptive acts or practices in or affecting commerce." Representations of material fact that are false or misleading constitute deceptive acts or practices prohibited by the FTC Act.

## COUNT II

81.   In numerous instances, through the means described in Paragraphs 28-31, in the course of collecting debts from consumers, Defendants, directly and indirectly, have represented to consumers, expressly or by implication, that the contract in question is misleading and disguised as a lease.

82.   In truth and in fact, in numerous instances the material representations set forth in Paragraph 81 were false or Defendants did not have a reasonable basis for the representations at the time the representations were made.

83.   Therefore, the representations set forth in Paragraph 81 were false or misleading and constitute deceptive acts or practices in violation of Section 5(m)(1)(A) of the FTC Act, 15 U.S.C. 45(m)(1)(A).

## PRAYOR FOR RELIEF

WHEREFORE, Plaintiff, Janay Jones prays for the following relief:

1.   That an order be entered for the relinquishing of the automobile title into Plaintiff's possession.

2.   That an order be entered for the removal of the current lien holder on the property.

3.   That an order be entered to release the alleged loan that was put in the Plaintiff's name.

4.   Award any actual damage sustained by such person as a result of the failure and reasonable expenses and in the case of an individual action twice the amount of any finance charge in connection with the transaction.

15 U.S. Code § 1640.

5.    Section 5(m)(l)(A) ofthe FTC Act, 15 U.S.C. § 45(m)(l)(A), 15 U.S.C. § 16921, and Section    4 ofthe Federal

Civil Penalties Inflation Adjustment Act of 1990, 28 U.S.C. § 2461, as amended, authorize the Court to award

monetary civil penalties of not more than $50,120 for each violation of the FTC.

6.    Grant any appropriate legal or equitable relief with respect to a violation of Federal Consumer Financial

Law(12 U.S. Code § 5565(a)(l)(2)(A-H)), for violation of the Enumerated consumer laws of the the Truth in Lend-

ing Act (15 U.S.C. 1601 et seq.)

      (12 U.S. Code § 5481 (12)(O) for any person that knowingly violates a Federal consumer financial law, civil

penalty may not exceed $1,000,000 for each day during which such violation continues(12 U.S. Code §

5565(c)(2)(3) with mitigating factors (12 U.S. Code § 5565(c)(3));

5.    Award additional relief as the Court may determine to be just and proper.


                        VIRGINIA ALCALA PRO SE
                        *Virginia Alcala* (signature)
                        By: Virginia Alcala
                        310 Acme St.
                        Dallas, Texas 75241
                        Phone: 214-245-6779
                        Email: valcala56@yahoo.com

## CERTIFICATE OF COMPLIANCE WITH RULE 11

Under Federal Rule of Civil Procedure 11, I certify to the best of my knowledge, information, and belief
that this subpoena is not being presented for an improper purpose, such as to harass, cause unnecessary
delay, or needlessly increase the cost of litigation; is supported by existing law or by a non-frivolous
argument for extending, modifying, or reversing existing law; the factual contentions have evidentiary
support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity
for further investigation or discovery; and this petition otherwise complies with the requirements of rule 11.

                        *Virginia Alcala* (signature)
                        By: Virginia Alcala

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing document will be served upon Bosco Auto Group or
his attorneys.
                        *Virginia Alcala* (signature)
                        By: Virginia Alcala

---